56 CCPA
**BULOVA WATCH COMPANY, Inc.,**
**Appellant,**

v.

**WALTHAM WATCH COMPANY,**
**Appellee.**

**Patent Appeal No. 8114.**

*United States Court of Customs and Patent Appeals.*

*April 10, 1969.*

Russell L. Law, Washington, D. C., for appellant.

Samuel W. Block, Leon Fieldman, Chester T. Kamin, Chicago, Ill. (Raymond, Mayer, Jenner & Block, Chicago, Ill., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, abstracted at 152 USPQ 836, dismissing appellant's opposition to appellee's application to register "AUTOCHRON" on the Principal Register for "watches," serial No. 182,988, filed December 13, 1963, claiming first use July 1, 1963. Appellant's opposition is based on its prior use and registration[1] of "ACCUTRON" for "watches."

The issue is whether "AUTOCHRON" so resembles "ACCUTRON" as to be likely, when both are applied to "watches," to cause confusion or mistake or to deceive. 15 U.S.C. § 1052(d).

Both parties have taken testimony and have submitted numerous documentary and physical exhibits. From the record it appears that appellant has, since about 1960, continuously used "ACCUTRON" as a trademark to identify a line of unique electro-mechanical timepieces

1. Principal Register registration No. 709,-055, issued December 27, 1960, on an application filed April 14, 1960, claiming first use March 31, 1960.

which differ from conventional watches in the use of an electronically-driven tuning fork as the timekeeping element. Witnesses for appellant testified that from 1960 to 1965 sales of "ACCUTRON" watches exceeded $24,000,000 and that over $5,000,000 was expended for "ACCUTRON" advertising during that same period.

Appellee has used "AUTOCHRON" as a trademark for a line of self-winding watches since July 1963. During the period from July 1, 1963, to June 30, 1965, appellee sold approximately nine thousand "AUTOCHRON" watches having an estimated value in excess of $400,000 and spent in excess of $200,000 on advertising material in which "AUTOCHRON" watches were featured or appeared.

Inasmuch as both appellant's registration and appellee's application recite "watches" as the goods to which the marks of the parties are applied, the goods here involved are identical, notwithstanding the fact that at the time the subject opposition was commenced the parties were *using* their marks on distinctly different types of watches.

In summary, the board was of the view that:

> * * * the differences between "AUTOCHRON" and "ACCUTRON" in sound, appearance, and significance are sufficient to render the mark registrably different and to obviate any likelihood that purchasers would mistakenly assume that the watches sold thereunder originate from the same source.[2]

Specifically, the board noted "an apparent discernible difference" between the parties' marks and found the differences in pronunciation of "ACCU" and "AUTO" to be sufficient to distinguish the marks as to sound. The board also appears to have attached substantial importance to the supposed "significance" of the respective marks. In this regard, the board said:

> * * * opposer's Director of Advertising and Sales Promotion testified that "ACCUTRON is a happy combination that suggests accuracy through electronics". With respect to applicant's mark, Webster's Third New International Dictionary (1961 Edition) defines "auto" as a combining form denoting "automatic, self-acting or self-regulating" and "chron" as a combining form from the Greek "Chronos" meaning "time". "AUTOCHRON" therefore suggests "automatic or self-regulating time" and thereby creates a commercial impression completely different from that connoted by "ACCUTRON".

While we agree with the board that there are differences between the involved marks in sound, meaning, and appearance, we think the board has over-analyzed the marks. We do not consider the self-evident differences in sound and appearance to be so substantial, when the marks are considered in their entireties, as to assure that consumers will not be confused. We are not convinced that even the average consumer would be as conscious of the significance of "ACCUTRON" intended by appellant or the significance of "AUTOCHRON" as was the board. In short, we are essentially of the same mind as we were in the "TIMEX"—"TELIX" case,[3] where, in spite of differences discoverable by close analysis, we said:

> We are not quite satisfied that when the competing marks are placed on identical goods and viewed in their entirety their differences are of so clear and positive a nature as to preclude

---

2. We assume the meaning of the expression "registrably different" to be *sufficient* difference to justify registration of applicant's mark, which makes it redundant with respect to the finding of no likelihood of confusion of source.

3. United States Time Corp. v. Jacob Tennenbaum (Tennenbaum & Co., Telix Watch, assignee, substituted), 46 CCPA 895, 267 F.2d 327, 122 USPQ 15 (1959).

the likelihood of confusion we think Congress intended * * *.

We respect the reasoning and conclusions below and *reverse* only on the well-established principle of trademark law of resolving doubt in favor of the first user who, here, as shown by the record, has * * * spent considerable time and money in establishing and promoting its mark. The newcomer is free to choose another mark, but not one which comes so close to appellant's mark as we think is the case here.

We think the marks "AUTOCHRON" and "ACCUTRON" have sufficient obvious similarities as to be likely to cause substantial confusion or mistake. The decision of the board is reversed.

Reversed.